## St. Louis, Iron Mountain & Southern Railway Company

### v. Boyle.

Opinion delivered June 24, 1907.

1. Master and Servant—Tort of State Convict—Liability.—Under Kirby's Digest, § 5856, reserving the control in the State of convicts hired out, a railroad company is not liable for the tortious act of a State convict in injuring an employee of the railroad company, though it may be liable for knowingly bringing vicious employees into contact with other employees. (Page 304.)

2. Same—Effect of Paying Wages.—The fact that the convict who assaulted plaintiff was receiving pay for his work did not change the status of the case if no change in the control of the convicts was shown. (Page 306.)

Appeal from Saline Circuit Court; *Alexander M. Duffie,* Judge; reversed.

*T. M. Mehaffy* and *J. E. Williams,* for appellant.

The relation of master and servant did not exist, and there could, therefore, be no recovery in this case. Kirby's Digest, § 5856; 71 Ga. 301; 161 Mass. 391; 75 Ala. 606; 42 Ark. 542. The rule of *respondeat superior* does not apply unless the relation of master and servant exists. 50 Ill. App. 513.

*Wood & Henderson,* for appellee.

Appellant's agents had entire control of the work done by the convicts and the manner in which it should be done, and it was liable. 42 Ark. 542; 72 Ark. 167.

The issue has been fully and fairly presented in appellee's 6th and 7th and appellant's 7th and 8th instructions, and the jury has settled the matter in favor of appellee. 58 Ark. 381; 67 *Id.* 47; 14 L. R. A. 73 and notes.

HILL, C. J. W. L. Reaves leased convicts from the State and hired them to the Iron Mountain Railway Company to do work upon the roadbed and repairing the track, which had been damaged by washouts. Boyle was a foreman in charge of a convict gang. Craft was foreman of another convict gang. Both foremen were under Welch, roadmaster, who had charge of the work. Campbell, a convict under Craft, was placed by Craft in charge of certain tools used in the work. Boyle needed some such tools, and was directed by Welch to get them from Craft's gang. He sent one of his hands, a trusty convict, for them, but Campbell refused to let him have them. He then went after them, himself, in company with his trusty. Boyle told Campbell that he wanted to borrow eight shovels, and that he would return them as soon as he got through with them. Campbell told them that he could not get them without an order from Craft. Boyle told him that he had an order from Welch, and that Welch was over them all, and his order was above that of Craft. He reached down and picked up eight shovels, and gave four to the trusty and started out with four himself. When he had gone a short distance, the convict picked up an iron bar, and said, "I will kill you, damn you!" and struck him; and severely injured him.

Boyle sued the Iron Mountain Railway Company for this injury, and recovered $1,000 in the circuit court, and the railway company has appealed.

The case was tried upon the theory that it was governed by the law as stated in *Ward* v. *Young,* 42 Ark. 542. In that case there was an injury maliciously inflicted by a convict who had been placed in charge of certain work by Ward, lessee of the penitentiary. The court said: "Ward's right to direct and control the acts of Hawkins (the convict) is the important circumstance. The particulars of the arrangement whereby he obtained that right are wholly unimportant." This is consonant to the general rule governing the relations between master and servant and the liability of the master for the acts of the servant. Thompson says: "The ultimate test being the *right or duty* to control." 4 Thomp. on Negligence, 3721.

Applying these facts to the principles at bar, did the relation of master and servant exist between the railroad company and Campbell, so as to render the railroad company liable for the tortious acts of Campbell committed while in the performance of duties imposed upon him by the company against an employee of the company, who, in the discharge of his duties, was brought in contact with said convict Campbell?

Since the decision in the Ward case was rendered the policy of the State has been wholly changed in regard to the management of convicts, evinced by the act of March 21, 1893, in which it is provided:

"Nor shall any contract ever be made by which the control of convicts, except to a reasonable amount of labor, shall pass from the State or its officers, and the State shall never be deprived of the right to direct how, at any and all times and under all circumstances, its convicts shall be lodged, fed, clothed, guarded, worked and treated, and the management and discipline of the convicts shall in all cases remain under the control of the State, and officers employed and paid by the State." Section 5856, Kirby's Digest.

These convicts were being worked by the railroad company pursuant to a contract made under this section of the statute, and were under the direct control of the officers of the State, their labor alone being contracted for; while the performance of

the labor was directed by employees of the company, the actual management and control of the convicts, while performing the labor under orders of the employees of the railroad company, was maintained, as required by law, by the officers of the penitentiary. These facts are indubitably established by the evidence.

The State having assumed control of the convicts, such control prevents the relation of master and servant existing between the convict and the person to whom his labor is sold. Liability in this case is dependent upon the doctrine of *respondeat superior;* and if the relation of master and servant does not exist, the doctrine does not apply. Without the doctrine of *respondeat superior* applying to these facts, there is no liability against the railroad company whatsoever. And the railroad company, not having control of the action of the convict, can not be held responsible for his tortious act in his dealings with employees of the company. An examination of cases involving the relation of contractor to convict reinforces this conclusion.

In Georgia it was held that the rule forbidding a recovery from a master by a servant who subjects himself to injury by going without objection into a place known by him to be dangerous is not applicable to a convict whose movements are controlled and directed by a guard or boss having and exercising the power of compelling the convict to obey his orders; and that he was excused on that account from an assumption of the risk, which would otherwise have relieved the master of liability. *Chattahoochee Brick Co.* v. *Braswell,* 92 Ga. 632.

In *Buckalew* v. *Tenn. Coal, Iron & R. Co.,* 112 Ala. 146, 20 So. Rep. 606, it was held that the relation of master and servant does not exist between a convict and one who has contracted with the State for convict labor; and a convict is not a fellow servant with the employees of the contractor with whom he is working in a common employment, nor of fellow convicts engaged in the same work.

In *Cunningham* v. *Bay State Shoe & Leather Co.,* 25 Hun, 210, it was held that the relation of master and servant does not exist between a convict and one who contracted for his services. See 9 Cyc. 876-8.

But the master is not relieved of the ordinary care towards convicts that he is required to exercise towards his employees,

and he will be liable to them for want of a safe place in which to work and for knowingly bringing vicious employees into contact with other employees; and other liabilities incident to the relation of master and servant. See *Porter* v. *Waters-Allen Co.,* 94 Tenn. 370; *Dalheim* v. *Lemon,* 45 Fed. Rep. 225; *Baltimore Boot & Shoe Mfg. Co.* v. *Jamar,* 93 Md. 404; 2 Labatt, Master & Servant, § 845.

A sound expression of the doctrine may be found stated in *Baltimore Boot & Shoe Mfg. Co.* v. *Jamar, supra,* as follows:

"In our opinion the legal principles applicable to such cases require that the contractor should be held to a master's liability to the convict whose labor he uses, in respect to those incidents of the employment over which he has the same measure of control that a master ordinarily has, but not as to those features of the employment over which he is essentially deprived of such control."

This injury occurred on Sunday, and there was a custom prevailing to allow convicts and guards pay for the work which they did on Sunday; and it was while such work was going on, and for which the convicts were being paid, that the injury complained of occurred. But the evidence shows that there was no change in the care or custody or control of the convicts in this extra work; and as the control is the determining question, these facts do not change the status of the case.

Judgment is reversed.