ARKANSAS NATURAL GAS COMPANY *v.* MILLER.

Opinion delivered December 16, 1912.

1. MASTER AND SERVANT—NEGLIGENCE OF INDEPENDENT CONTRACTOR.— Where work is being done by independent contractors, the liability of the property owner depends upon whether it has retained control

and direction of the work; but neither the reservation of the power to terminate the contract when in the discretion of the engineer the work is not progressing satisfactorily, nor the right to exercise general supervision and inspect the work as it progresses, nor the right to enforce forfeitures, will change the relation so as to render the property owner liable.    (Page 481.)

2.  SAME—EFFECT OF LENDING SERVANT.—A general servant may be loaned by his master to another for some special service, so as to become as to that service the servant of the latter; the test being whether in the particular service he continues liable to the master's control or becomes subject to the party to whom he is lent.    (Page 481.)

3.  SAME—TRIAL—QUESTION FOR JURY.—In an action for personal injuries against one employing an independent contractor for acts of his servant, whether such servant was acting under the direction of the contractor or the one employing him was, under the evidence, for the jury.    (Page 483.)

4.  SAME—INSTRUCTION—INDEPENDENT CONTRACTOR.—An instruction that plaintiffs had the right to rely upon the assumption that the defendant would properly turn the gas into the pipes was erroneous where there was evidence to show that such duty devolved upon an independent contractor employed by defendant, and that defendant's servant who turned on the gas was doing so under the direction and control of such independent contractor.    (Page 483.)

Appeal from Saline Circuit Court; *W. H. Evans*, Judge; reversed.

*Moore, Smith & Moore*, for appellant.

The gas company was not liable for the acts of its independent contractors, or its agents or employees, even if injury resulted from their negligence. Pitts was an employee of appellant, but in opening the gates of the gas main and failing to close them or shut off the gas he was acting under the orders of the contractors' agent, and was their agent. 54 Ark. 424; 77 *Id.* 552; 156 N. Y. 75; 60 N. E. 87; 166 Mass. 268; 35 N. E. 101; 20 Moak, Eng. Rep. 469. The test is who directs the movements of the person committing the injury. 156 N. Y. 75. Pitts was simply lent to independent contractors and doing their work, under their orders. L. R. 6 C. P. 24. Under these authorities the court erred in its charge to the jury.

*Robertson & DeMers*, for appellees.

1.  Booth & Flinn were not independent contractors, as found by the jury upon a proper charge.

2. Pitts was the agent and employee of appellant on duty and subject to its orders. 62 N. Y. Supp. 1086; 46 Fed. 506; 63 Pac. 177; 10 N. Y. Supp. 927; 83 Ark. 302. The relation of master and servant never existed between Booth & Flinn and Pitts. 83 Ark. 302; 133 N. W. 888; 38 L. R. A. (N. S.) 973; 203 N. Y. 191; 38 L. R. A. (N. S.) 481. There is no error in the court's charge.

McCULLOCH, C. J. Plaintiffs, Patrick Gallagher and Joe Miller, instituted separate actions against defendant, Arkansas Natural Gas Company, to recover damages for personal injuries caused by an explosion of gas during the construction of a pipe line from the Caddo fields to the city of Little Rock. The actions were consolidated and tried together, the trial resulting in verdicts in favor of each of the plaintiffs, awarding damages, and the defendant has appealed to this court.

The pipe line was laid by Booth & Flinn, a partnership, under a written contract with defendant, whereby the contractors agreed to furnish the material and do the work for a stipulated price. The contract provided that "all material furnished by the said contractor in the construction and laying of said pipe line, and all work done shall be subject to the inspection and approval of the company, or its duly authorized agent; and that the said inspection shall be made as work progresses, and that any defective material or workmanship shall be pointed out by it as soon as the same is discovered and the said defect shall be at once remedied by the said contractor." It further provided that the contractors should be responsible for the proper working of the entire pipe-line system for thirty days after the same should be completed and put into use, and that the line should remain in charge of the contractors after it was completed and put into use during the time that the contractors should be engaged in remedying defects pointed out by the company or its inspectors.

During the progress of constructing the pipe line, and after it had been laid as far north as Beirne, a town or village in Clark County, one of defendant's inspectors, in going over the line, discovered a leak near Beirne, and gave notice thereof to the defendants as well as to the superintendent of the contractors. The contractors sent a force of men to that place

to repair the leak, and in doing so it became necessary to strip the pipes to ascertain the precise location and extent of leaks, and also it became necessary to turn the gas into the pipe line for that purpose. The plaintiffs were both employees of the contractors in doing the work in and about repairing the line, and while eating their lunches about the noon hour an accumulation of gas in the pipes caused an explosion, which resulted in severe personal injuries to them. They alleged that negligence of servants of the defendant in turning in an excessive quantity or pressure of gas, and leaving it in the line too long, caused the explosion. The defendant denied that the injury was caused by any negligence of its servants, and contends that the negligence, if any, was that of the contractors and their servants. The evidence shows, as before stated, that it was customary for one of defendant's inspectors to go over the line for the purpose of inspecting for leaks, and when any were discovered they were marked and notice given to the contractors. In making inspections it was necessary to turn the gas into the line, which the inspector would do, and after he had marked the place of a leak he would again turn the gas off. When the contractors went about repairing leaks, it was necessary to again turn the gas into the pipes for their benefit in discovering the precise location of leaks, and for this purpose the inspectors were instructed by defendant to turn the gas into the pipes when requested to do so by the contractors, and to turn it off under their directions. No one but defendant's inspectors were permitted to turn the gas on or off. On this particular occasion, W. H. Pitts, one of the inspectors, after he had discovered the leak, and the contractors had sent a gang of workmen to repair it, was requested by the foreman or superintendent to turn in the gas. This was done between 10 and 11 o'clock in the morning. The men were thereafter engaged up to the noon hour in stripping the pipes so that the leak could be repaired, and the gas was allowed to remain in the pipes until nearly 1 o'clock, when the explosion occurred. At that time Pitts had left the line and had started to Beirne to get his lunch.

The contention of the plaintiffs is that the explosion was caused by the negligence of Pitts in handling the gas, either in turning it on or letting it remain too long in the pipes. They

insist that in doing this Pitts was the servant of the defendant, and that the latter is responsible for all of his negligent acts. On the other hand, the contention of defendant is that Pitts, though in its general employment, was doing the particular service as a servant of the contractors, and that the defendant is in no wise liable for his alleged negligence.

According to the undisputed evidence in the case Booth & Flinn were independent contractors, and the defendant was not responsible for their negligence or for that of their servants. *St. Louis, I. M. & S. Ry. Co.* v. *Gillihan,* 77 Ark. 551. In that case we quote with approval the following statement of the law from Elliott on Railroads (vol. 3, § 1063): "In general, it may be said that the liability of the company depends upon whether or not it has retained control and direction of the work. But neither the reservation of the power to terminate the contract when in the discretion of the engineer the work is not progressing satisfactorily, the right to exercise general supervision and inspect the work as it progresses, nor the right to enforce forfeitures, will change the relation so as to render the company liable." According to this well-settled principle of the law, the defendant was not liable for the negligent acts of the contractors or their servants merely because it furnished an inspector to see that the work was done according to the contract. The only question in the case is whether or not Pitts was the servant of the defendant at the time of his alleged negligent act, in the sense that the defendant is liable therefor under the doctrine of *respondeat superior.* The evidence shows that at the time the explosion occurred the pipe line was under the control and management of the contractors, and the work of repairing was being done by them. The defendant furnished the services of Pitts merely to turn the gas on and off at the request of the contractors, and there is evidence tending to show that in doing this he was under the entire control of the contractors. There is testimony to the effect that Pitts was to regulate the manner of turning in the gas, but that the foreman or superintendent of the contractors should be the sole judge as to when it should be turned on and when it should be turned off, Pitts being as to those matters entirely under their direction and control.

"It is well settled," says the Massachusetts court, "that

one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become as to that service the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master or becomes subject to that of the party to whom he is lent or hired." *Coughlan* v. *Cambridge*, 166 Mass. 268. The same principal is announced in many other cases. 1 Shearman & Redfield on Negligence, § § 160 and 161; 1 Dresser's Employer's Liability, p. 50; *Deloy* v. *Blodgett*, 185 Mass. 126; *Wyllie* v. *Palmer*, 137 N. Y. 248; *Higgins* v. *Western Union Tel. Co.*, 156 N. Y. 75; *Consolidated Fire Works Co.* v. *Koehl*, 190 Ill. 145, 60 N. E. 87; *Rourke* v. *White Moss Colliery Co.*, 20 Moak Rep. 469.

In *Higgins* v. *Western Union Tel. Co.*, *supra*, the facts were quite similar, so far as application of the principles here announced was involved. The court, in disposing of the case, said:

"The fact that the party to whose wrongful or negligent act an injury may be traced was, at the time, in the general employment and pay of another person, does not necessarily make the latter the master and responsible for his acts. The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct, Servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction, and that, too, when their general employer is interested in the work."

In that case the defendant was the owner of a building in the city of New York which it was having repaired after injury caused by fire, and it was the duty of the contractor making the repairs, among other things, to place elevators in the building. The elevator had been turned over as complete by the contractor, but at the time of the accident the owner was using it for carrying passengers, and the contractor was also using it for the purpose of doing some plastering in the shaft. On the day of the accident one of defendant's servants employed to run the elevator suspended work about noon, while the contractor, during the rest of the day, used the elevator as a platform for the plasterer to stand upon, and the

same servant employed by defendant to run the elevator remained in charge for the special work being done by the contractor under the latter's direction and control. The court held that under those circumstances the servant at that particular time was engaged in the service, not of the owner of the building, but of the contractor, and that the latter was responsible for his neligent act.

The principle announced in those cases is, we think, controlling in the present one. To the extent that Pitts was working under the direction and control of the defendant, he remained the latter's servant, and it alone is responsible for his negligence. On the other hand, to the extent that the direction and control was surrendered to the contractors for work being done by them, Pitts was in their service, even though he was in the general employment of the defendant, and the contractors alone are liable. It was the peculiar province of the jury to determine from the testimony the extent to which Pitts was acting for the defendant and was carrying out its directions, and to what extent he was performing service for the benefit of the contractors and under their direction and control. If the services of Pitts were lent by the defendant to the contractors, and he was required to proceed in the performance of their work entirely under their control and direction in turning on the gas and in turning it off, then he must be treated as the servant of the contractors, and they alone are responsible for his negligence. On the other hand, if, in turning on or off the gas, he had any duty to perform for the defendant, in whose general employment he was at the time, and in the performance of that particular duty he was guilty of a negligent act, then the defendant is responsible. The fact that defendant was interested in the work as owner would not make it liable for the injuries if the work being done was that falling within the duty of the contractors, and Pitts was acting under their direction in the particular act or omission which it is alleged constituted the negligence.

The case was not correctly submitted to the jury in accordance with the principles here announced, and the judgment must on that account be reversed. In the first instruction given at the request of plaintiffs the jury were told broadly that if the inspector, Pitts, was "in the entire or partial charge

of the gate through which the gas was turned into and shut off from the pipes, and failed to exercise reasonable care and precaution for the safety of plaintiffs in negligently and improperly turning the gas into said pipes in such quantity and with such force, or negligently and improperly permitted said gas to remain turned into said pipes for an unnecessary length of time, or negligently failed to warn plaintiffs of the danger to which they were exposed by virtue of the gas being turned into and permitted to remain turned into said pipes," and that his negligent act caused plaintiffs' injuries, then the defendant would be liable.

This entirely ignored the proof adduced by plaintiffs tending to show that Pitts was not the servant of the defendant in the particulars named.

Again in instruction No. 2 the jury were told that plaintiffs "had the right to rely upon the assumption that the defendant, in the exercise of reasonable care and precaution for their safety, would properly turn the gas into the pipes, and would properly shut the same off, and would give them, timely warning of any danger to which they were exposed," etc.

This was wrong, because the proof on the part of the defendant tended to show that the business of repairing the leaks was altogether that of the contractors, and that the duties enumerated in the above instruction devolved upon them.

Other instructions along the same lines need not be discussed, for the errors contained in those mentioned are sufficient to call for a reversal.

Some of the instructions requested by the defendant were refused and some modified so as to eliminate the submission of the questions hereinbefore indicated which the defendant was entitled to have submitted to the jury. We have not critically examined all of the defendant's requested instructions for the purpose of determining whether they contain accurate statements of the law, and therefore do not mean to approve them all; but some of them, at least, contained proper submissions of the questions involved in this case, and should have been given.

For the errors indicated the judgment is reversed, and the cause remanded for a new trial.