ARKANSAS LAND & LUMBER COMPANY *v.* SECRIST.

Opinion delivered May 24, 1915.

1. MASTER AND SERVANT—INJURY TO SERVANT—INDEPENDENT CONTRACTOR. —While the owner of a building has the right to see that the building is constructed according to the plans, the mere exercise of this right does not create the relation of master and servant between the owner and the servant of an independent contractor, employed to construct the building, unless the owner undertakes to direct the manner in which the laborer shall work in the discharge of his duties.

2. MASTER AND SERVANT—INJURY TO SERVANT—INDEPENDENT CONTRACTOR. —Mere supervision over the work of an independent contractor does not make a principal employer the master of the servants employed by the contractor, and who perform the work, if such supervision consists only in seeing that the plans have been followed, and does not go to the extent of saying who shall do the work, or how it shall be done.

3. MASTER AND SERVANT—RELATIONSHIP—INDEPENDENT CONTRACTOR.— A servant remains the servant of an independent contractor if the right of direction and control abides with the independent contractor.

Appeal from Hot Spring Circuit Court; *W. H. Evans,* Judge; reversed.

STATEMENT BY THE COURT.

Appellee alleged in his complaint that on the 10th of January, 1914, he was engaged as a laborer in helping to construct extensive mill sheds for the appellant company and that in the construction of these sheds the appellant company had negligently and carelessly caused the carpenters constructing them to place the joists on which the roof rested without any bracing of any kind whatever to support the same, the only support for said joists being nails at the ends thereof, and that the appellant company knew that said manner of supporting the joists without bracing and with only nails at the ends thereof was insufficient and dangerous to employees working on top of the shed. That appellee had nothing to do with the construction of said sheds, being employed in conveying lumber and other material from one part of the sheds to other parts thereof for the use

of those actually carrying on the work of construction, and that he did not know of the defective, dangerous and negligent manner in which said construction work was being done; and that while he was engaged in helping to remove and distribute a large pile of lumber negligently placed on top of the shed by appellant's servants in such quantity that the shed negligently constructed as aforesaid would not support, collapsed by reason of the joists giving away, and appellee was precipitated to the ground, and parts of the lumber fell upon him, inflicting serious injuries.

Appellee recovered judgment for a very substantial sum, which is not claimed to be excessive. Without setting out the proof in detail showing the circumstances under which appellee sustained the injury sued for, it may be said that the proof is sufficient to support the finding of the jury that appellee's injury was due to the manner in which the joists had been constructed in conjunction with the negligent placing on the top of the shed of a pile of lumber containing a thousand or twelve hundred feet.

But the principal defense in this case is that appellee was not the servant of appellant at the time of his injury, but was the servant of one D. G. Allen, who was engaged in the construction of the sheds as an independent contractor. The proof shows, without dispute, that Allen was a contractor engaged in the construction of the various kinds of buildings, and had been operating as a contractor for several years, and that appellee, together with the other servants engaged in the construction of the shed in question, had all been employed by Allen, or by a Mr. Pryor, who was his foreman, and that appellee and all other servants employed on this job were paid their wages by Allen. Allen had a contract in writing under which he was operating at the time of appellee's injury, which consisted in a proposition made by him to construct the shed and the acceptance of his offer by the manager of the appellant company. This writing was as follows:

"D. G. Allen, contractor and builder. Estimates furnished on application. Telephone No. 206, Malvern, Ark., June 4, 1913. Mr. G. E. Mattison, City. Dear Sir: I will build your shed for $6.40 per thousand feet, you to furnish all material, in a convenient place to building site and all piers ready for posts to be set. Will build your tram under same conditions for $5.40 per thousand feet. Yours truly, (Signed) D. G. Allen.

"Accepted 8-1-1913. Ark. L. & L. Co., G. E. Mattison, Mgr."

Allen testified that the appellant company had nothing to do with the work except to see that the shed was constructed in accordance with the plans, and that the appellant company had nothing to do with employing or discharging the labor, and that it had no authority to give, and did not give, any orders or directions to any of the laborers in regard to the manner of performing their work, but that any suggestions or directions concerning the work made by appellants were given either to him or to his foreman, and were given for the purpose of conforming the work to the plans. He testified that the lumber company furnished the plans and specifications to go by, and that certain changes were made by its superintendent in the plans, but such changes were indicated on the blueprint. That on one occasion the superintendent made some changes in the material to be used, but no directions were ever given by any representative of the appellant company to the men about their work, but that he and his foreman at all times had sole authority and supervision over the appellee and all other laborers. It is shown, however, that appellant's general manager and superintendent were both about the work once or twice a day, and sometimes oftener, and Allen's foreman and one of the laborers both testified on cross-examination that it was their duty to do as they were told by appellant's superintendent, and that they were subject to his orders in the performance of their duties. But a consideration of all the evidence given by these witnesses make it plain that they only intended to say that the superin-

tendent had the right to prescribe plans for the building, and that it was their duty to execute these plans.

Much importance is attached by appellee to the statement of Pryor as to his recognition of the authority of appellant's superintendent to direct the construction of the work; but in explanation of this statement he said that Mr. Mattison (the superintendent) did not have any more authority to direct him in that work than the owner of a house that he might be building would have in coming in and suggesting what to do about the house in connection with the plans of it, and that neither Mr. Mattison nor Mr. Rowland, appellant's mill foreman, had any authority, nor had they undertaken to exercise any authority, to direct the details of the construction work further than to be on the job and to see whether or not it was done in accordance with the contract. There was proof to the effect that on one occasion Pryor and a carpenter named Hendershot discussed the safety of the plans, which called for only one stringer when they thought two would be safer. Hendershot says that before this work was done, Pryor consulted Mattison, and while he did not know what conversation took place between them, he did know that only one stringer was used. No attempt was made, however, to show by either Mattison or Pryor that Mattison had given any directions in this particular. It was shown that on one occasion appellants' superintendent went to where the work was going on and ordered certain tram posts cut off; but it was further shown that this was done because the appellant company, which was putting in the foundation, had put the foundation to a certain height and the posts had to conform to that, and as they had been put in too high they had to be cut off to conform to the foundation. It was also shown that at another time Mr. Mattison gave some directions about a change in the size of material used; but this direction was given to Mr. Allen, and it was not shown that any directions at any time were given by any representative of the appellant company except to Allen or his foreman.

*Wynne & Harrison,* for appellant.

Appellee was in the employ of an independent contractor and the court should so have instructed the jury and directed them to return a verdict for the appellant. The question whether or not Allen was an independent contractor was one of law addressed to the judgment of the court. 19 Am. & Eng. Ann. Cases, 1 and notes; 76 S. W. 987; 114 S. W. 538; 104 S. W. 495; 53 S. E. 733; 101 Pac. 681; 38 Col. 440; 77 Ark. 551; 3 Elliott on Railroads, par. 1063; 92 Pac. 360; 52 So. 476; 147 Ill. App. 575; 151 Ill. App. 144; 131 S. W. 917; 162 Ala. 396; 45 Cal. 96; 117 Ky. 655; 2 N. Y. L. 337; 19 Ind. App. 565; Sherman & Redfield on Negligence, § 165; Cooley on Torts, 549; 2 Thompson on Negligence, 899; 46 L. R. A. 367; 95 Pac. 398; 62 S. E. 436; 104 S. W. 495; 102 N. Y. S. 783; 40 So. 1007.

*John C. Ross,* for appellee.

1.   The fact that a person is in the general employment and pay of one person does not of itself make that person his master.   57 Ark. 615; 105 Ark. 482.

2.   The supreme test is the right of control over the work of the employee.   L. R. 6 Q. B. Div. 532; L. R. 2 C. C. 37; 57 Vt. 252; Sherman & Redfield on Negligence, § 73; 1 Labatt, Master & Servant, § 18; *Id.* p. 56; *Id.* § § 64, 52; 103 Mass. 194; 118 Mass. 116; 212 U. S. 215; 126 N. Y. Supp. 538; 83 Vt. 44; 1 Labatt, Master & Servant, p. 173.

3.   The right of an employer of a contractor to control the details of the contractor's work, determines the employers responsibility, and not the actual exercise of control.   If the employer retains such right of control, whether he exercises it or not, he is liable as a master for all the consequences of negligence resulting from such work, and if he exercises such right, his responsibility is clear.   Moll, Independent Contractors & Employer's Liability, § 19; *Id.,* § 20; 137 Mass. 123; 105 Ark. 477, 482; 1 White, Personal Injuries, § § 276, 277; 82 Fed. 177; 17 L. R. A. (N. S.) 370; 111 Pa. 343; 43

Ill. App. 105; 71 Mo. 303; 15 Wall. 649; 39 La. Ann. 1011; 45 Ill. 455; 52 Minn. 474; 106 La. 371; 173 S. W. 184.

4. Where there is any conflict in the evidence as to who has the right to control and who does control the party committing the negligence complained of, the question of whether the contractor is independent or a mere servant is for the jury. Moll, Independent Contractor & Employer's Liability, § § 27, 29; 1 Thompson on Negligence, § 640; 94 Va. 60; 1 White, Personal Injuries, § 280; 177 Mo. 427; 76 S. W. 987; 145 Ill. 189; 98 Md. 43; 181 Mass. 416; 171 N. Y. 507; 118 Ia. 417; 66 Minn. 76; 9 App. (N. Y.) 145; 86 Minn. 458; 154 Mass. 419; 78 Pa. 25; 88 Pa. 269; 68 Minn. 23; 76 S. W. 987; 91 Tex. 18; 206 Ill. 283; 122 Mass. 481; 132 N. C. 151; 66 L. R. A. 941; 111 Ark. 91.

5. Where an injury may be due to unsafe plans furnished by the employer, he is liable for such injury as for work he authorized the contractor to do, and becomes in such case, in effect, the master of the work, and those engaged therein become, in effect, his servants. 1 Labatt, M. & S., § 41; 77 Ark. 551; 1 White, Personal Injuries, § 286; 68 Am. Dec. 345; 92 Mo. 460; 62 Kan. 25; 1 Daly (N. Y.) 128; 125 Mass. 232; 82 Wis. 289.

SMITH, J., (after stating the facts). No serious objection is made to any of the instructions given by the court except that appellant insists that the undisputed evidence shows that appellee was the servant of an independent contractor, and that under no view of the evidence was the appellant company responsible for his injury.

The law of this question was stated in the opinion of this court in the case of *Arkansas Natural Gas Co.* v. *Miller,* 105 Ark. 477, in which case we quoted with approval the following statement of the law from Elliott on Railroads, volume 2, section 1063, as follows:

"In general, it may be said that the liability of the company depends upon whether or not it has retained control and direction of the work. But neither the reservation of the power to terminate the contract when in the

discretion of the engineer the work is not progressing satisfactorily, the right to exercise general supervision and inspect the work as it progresses, nor the right to enforce forfeitures, will change the relation so as to render the company liable."

And it was there further said: "According to this well settled principle of the law, the defendant was not liable for the negligent acts of the contractors or their servants, merely because it furnished an inspector to see that the work was done according to the contract."

(1) The evidence in this case, when subjected to the test here stated, did not call for the submission to the jury of the question of appellant's liability for appellee's injury. We think the fact is undisputed, when the evidence has been viewed in the light most favorable to appellee, that Allen was an independent contractor, and that no representative of the appellant company was shown to have had any authority or supervision over appellee, and that no representative of appellant company directed, or offered to direct, appellee in the discharge of his duties. The owner of a building, or principal employer has the right always to see that the building is constructed according to the plans, and the mere exercise of this right does not create the relation of master and servant between the owner and the servant, and does not place upon the owner any liability to the servant, unless the owner undertakes to direct the manner in which the laborer shall work in the discharge of his duties. And the same thing is true in regard to any mere change in the plan of construction. The making of this change does not alter the relation between the owner and the servant, unless the owner undertakes to direct and supervise the manner in which the servant shall do his work in making the change.

Nor do we agree with appellee in the importance to be attached to the inference which he says should be drawn from the proof in regard to the conversation between Pryor and Mattison concerning the use of one stringer instead of two in a certain part of the work,

even if we should conclude that the evidence supported the inference that Mattison had directed that only one stringer should be used. The use of one stringer, instead of two, did not occasion the appellee's injury, and the proof that Pryor sought Mattison's advice would not make Allen any the less an independent contractor, because the use of two stringers instead of one would have been only one of those changes in the plans which the owner had the authority to make.

(2-3)    Neither the directions given in regard to cutting off the posts, nor any other similar directions, could change the relationship of the parties, because such directions were given in the exercise of the owner's right to see that the work conformed to the plans, and, as was stated in the case of *Arkansas Natural Gas Co.* v. *Miller, supra,* such supervision over the work of the independent contractor does not make the owner or principal employer the master of the servant who performs the work if such supervision consists only in seeing that the plans have been followed, and does not go to the extent of saying who shall do the work or how it shall be done. The servant remains the servant of the independent contractor if the right of direction and control abides with the independent contractor.

Appellee asserts an additional right of recovery, that is that appellee had furnished unsafe plans for building the sheds. But we need not discuss the law of that question, because the proof does not show that appellee's injury was due to any defective plans. Appellee proved, and the fact is undisputed, that a lot of lumber, containing a thousand or twelve hundred feet, had been negligently piled together, and that this great weight caused the giving away of the joists which resulted in appellee's injury; and the stacking of this lumber was no part of the plans.

Moreover, this ground of liability was not alleged in the pleadings, and appellant's liability on that account was not submitted to the jury in any of the instructions asked or given, and we will not remand this cause for a trial upon that issue. In our view of this evidence

the court should have instructed the jury that Allen was an independent contractor, and that the proof was insufficient to show that the appellant company had exercised any control or supervision over appellee in the discharge of his duties which made it liable for his injury, and a verdict should, therefore, have been directed in his favor. And for the error in so refusing to direct a verdict the judgment will be reversed and the cause will be dismissed.