TAYLOR *v*. ARKANSAS LIGHT & POWER COMPANY.

Opinion delivered May 2, 1927.

MASTER AND SERVANT—INDEPENDENT CONTRACTOR.—Where a contract of employment of State convicts provided that they should be guarded and worked under the direction of a warden employed by the State, the defendant having no control over the person of the convicts, but only the right to designate what work was to be done, the relation of master and servant did not exist between defendant and a convict who was injured while employed in clearing land on defendant's property, and defendant is not liable for injuries sustained by such convict when a tree fell on him while engaged in such work.

Appeal from Hot Spring Circuit Court; *Thomas E. Toler*, Judge; affirmed.

STATEMENT OF FACTS.

Sidney S. Taylor, as administrator of the estate of R. L. McKinnon, deceased, instituted this action against the Arkansas Light & Power Company to recover dam-

ages because of the negligent act of the defendant in allowing a tree to fall upon said R. L. McKinnon while he was engaged in clearing land for it. The defendant denied that the relation of master and servant existed between it and R. L. McKinnon at the time he was killed, or that it was guilty of any negligent act in the premises.

The record shows that, during the year 1923, the Arkansas Penitentiary Commission made a contract with the Arkansas Light & Power Company to furnish it fifty convicts at a dollar and one-half per day, with which to clear ground to be used as a reservoir in connection with its water-power dam, which was being constructed by it in Hot Spring County, Arkansas. Under the terms of the contract the Penitentiary Commission was to furnish all board, including food and the preparation thereof, for the men supplied, and all bedding needed and used by them. It was further agreed that the Penitentiary Commission should supply, at its own expense and upon its own responsibility, all guards and other help needed for the care of said convicts, without any responsibility upon the part of said company.

R. L. McKinnon was one of the convicts so furnished, and was put to work clearing land, with his fellow-convicts, for said company. A warden was over the men and directed them which trees to cut down. McKinnon and other convicts had sawed down a tree, which lodged against another tree. The convicts were then directed to saw down the second tree in order that the lodged tree might fall to the ground. While they were sawing the second tree, the first tree began to fall, and, as McKinnon started to run and get from under the tree, it fell upon him and injured him so severely that he died. One of the men hollered, "Look out!" just as the tree began to fall. There was some brush where McKinnon ran, and this prevented him from getting out of the reach of the falling tree.

The circuit court granted a motion of the defendant for a peremptory verdict on the ground that the relation of master and servant did exist between the parties; and

that, if such relation did exist, there was no evidence to show that the defendant was guilty of negligence. The case is here on appeal.

*Martin, Wootton & Martin* and *Sydney S. Taylor,* for appellant.

*Robinson, House & Moses,* for appellee.

HART, C. J., (after stating the facts). The circuit court was right in directing a verdict for the defendant. The case is controlled by the principles of law announced in *St. Louis, Iron Mountain & Southern Ry. Co.* v. *Boyle,* 83 Ark. 302, 103 S. W. 744. In that case it was held that, under Kirby's Digest, § 5856, reserving the control in the State of convicts hired out, a railroad company is not liable for the tortious act of a State convict in injuring an employee of the railroad company. In that case the court recognized that the relation of master and servant rests upon a contract of service between the parties, the essential elements of which are that the master shall have control of the employee and the right to direct the manner in which the service shall be performed.

The same statute was in force at the time McKinnon was hurt in the case at bar. The contract of employment expressly provided that the convicts should be guarded and worked under the direction of a warden employed by the State. The State clothed, fed and guarded the convicts and directed their movements while they were at work. The servants of the defendant would point out to the warden what ground was to be cleared, and the warden directed the movements of the convicts in cutting down the trees. The defendant had no control over the persons of the convicts, and they worked under the State's own officers, who were there to guard and care for the men in the performance of their labor. The defendant only had the right to designate what work was to be done, but the warden in charge of the convicts had the exclusive right to guard and direct the convicts in the performance of their work. Hence, under the principles of law laid down in the case above cited, the relation of master and servant did not exist between the defendant

and McKinnon at the time the tree fell upon him and caused his death.

It is not like the case where the proprietor of a mill or a mine, where convicts have been sent to work, fails to use ordinary care to keep the instrumentalities and the place of work in safe condition. Here they had only a *prima facie* right to designate the work to be done, and the State warden directed the convicts in the performance of their work.

But it is urged that the principles of law in that case are changed because, under § 9694 of Crawford & Moses' Digest, it is provided that the Penitentiary Commission shall not hire out or lease, or permit any person to hire out or lease, any of the convicts of this State to any person or persons whomsoever. In *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43, it was held that a contract leasing convicts to a corporation to construct the dam in question was in violation of this section of the statute, although the physical control and custody of the convicts were under the supervision and control of guards and wardens appointed by the Penitentiary Commission. It was said that the public policy of the State was to prevent the leasing of convicts to persons or corporations to be worked by them for private gain. We are not able to see, however, how the holding in this case could in any wise change the principles decided in the case first cited. There was no right or duty of control in the defendant in the present case, and there was no negligence in failing to provide safe instrumentalities or a safe place in which to work. The defendant simply told the State warden what trees were to be cut down, and the State warden had exclusive control of the convicts in directing their methods of work.

It follows that the judgment of the circuit court will be affirmed.