**Alfred WATLAND and Superwood Cor-
poration, Appellants,**

v.

**John WALTON, Appellee.**

**No. 19299.**

United States Court of Appeals
Eighth Circuit.

April 9, 1969.

**2**

John W. Barron, of Rose, Meek, House, Barron, Nash & Williamson, Little Rock, Ark., for appellants.

H. Clay Robinson, Little Rock, Ark., for appellee.

Before VAN OOSTERHOUT, Chief Judge, and MATTHES and BRIGHT, Circuit Judges.

MATTHES, Circuit Judge.

Appellee filed a suit in the Circuit Court of Pulaski County, Arkansas, to recover damages for personal injuries he sustained on August 10, 1966. Because of diversity of citizenship and the amount in controversy the defendants, Alfred Watland and Superwood Corporation, removed the case to the United States District Court for the Eastern District of Arkansas. A jury trial resulted in a verdict for appellee of $36,300. This appeal is from the ensuing judgment.

The issues litigated were: (1) whether defendant Watland was negligent; (2) whether Watland occupied the status of an employee or servant of Superwood when the negligent act occurred; (3) whether Superwood was guilty of negligence in the preparation of a drawing used in connection with the construction of a drainage ditch which caved in and caused appellee's injuries; (4) whether appellee was guilty of contributory negligence. The issues were resolved in appellee's favor by special verdicts on appropriate interrogatories submitted to the jury in accordance with the provisions of Rule 49, Fed.R.Civ.P.

Watland, who denied negligence, concedes here that a case was made for the jury on that issue and he has abandoned his appeal.

Superwood has abandoned the question of appellee's contributory negligence. Its appeal is primarily centered in issues (2) and (3) stated above.

A resume of the uncontradicted facts will aid in placing issue (2) in proper perspective.

The parties stipulated that Little Rock Hardboard, Inc., an Arkansas corporation, was at all pertinent times the wholly owned subsidiary of Superwood Corporation of Duluth, Minnesota. Pursuant to negotiations initiated in January, 1966, the two corporations agreed to an expansion of Hardboard's plant in North Little Rock. There is evidence that Superwood had made the decision to expand.[1] It prepared the plans and specifications for the expansion project and charged the costs to Hardboard. Watland had been engaged in the supervision of construction for approximately 25 years and had worked 14 years for Superwood. This company directed Watland to supervise the construction of the expansion project for Hardboard. Watland went to Little Rock in February and was engaged in the supervision of the plant continuously from that time. His wages were paid by Superwood, which was in turn reimbursed by Hardboard. Watland's hotel expenses were also paid by Hardboard.

During the spring of 1966, the general manager of Hardboard decided to reroute an effluent line through which effluent had been discharged upon private property. Based upon information revealed by an aerial photograph taken by Hardboard, Superwood prepared a drawing showing the depth, width and other relevant information in regard to the location of the ditch in which the new effluent line was placed. In August, Wat-

---

1. Pierce, general manager of Hardboard, testified that Superwood had, "in a sense, because of the corporation's structure," made the decision to expand.

land commenced supervision of the digging of the ditch. In doing so he followed the drawing prepared by Superwood. On August 10, during the excavation, appellee, who was in the ditch, sustained serious injuries resulting from a cave-in or slide of the walls of the ditch. The slide occurred from improper shoring or bracing.

Superwood timely challenged the sufficiency of the evidence to warrant submission of either theory of liability to the jury. It stoutly contends here that the evidence conclusively shows that Watland was not an agent or servant of Superwood in supervising the construction of the ditch. In amplifying its position, Superwood, relying on the loaned servant doctrine, recognizes that Watland was the general servant of Superwood but had been loaned by it to Hardboard for the special purpose of supervising the construction of the plant expansion project; that during the period in question, and particularly when the ditch was being excavated, Watland was working under the sole direction and control of Hardboard and was not subject to the direction and control of his general master.

The loaned servant doctrine has been considered by the Supreme Court of Arkansas in Barton-Mansfield Co. v. Bogey, 201 Ark. 860, 147 S.W.2d 977 (1941); Taylor v. Arkansas Light & Power Co., 173 Ark. 868, 293 S.W. 1007 (1927); Arkansas Logging Co. v. Martin, 116 Ark. 318, 173 S.W. 184 (1915); St. Louis, I. M. & S. Ry. Co. v. Yates, 111 Ark. 486, 165 S.W. 282 (1914); Arkansas Natural Gas Co. v. Miller, 105 Ark. 477, 152 S.W. 147 (1912); and St. Louis, I. M. & S. Ry. Co. v. Boyle, 83 Ark. 302, 103 S.W. 744, 12 L.R.A.,N.S., 317 (1907). These cases recognize the well established principle that the employer who retains direction and control over the employee is responsible for his negligent acts. And, as the court has stated, "the *right* to direct and control * * * is the important circumstance." St. Louis, I. M. & S. Ry. Co. v. Boyle, 83 Ark. 302, 304, 103 S.W. 744, 745 (emphasis added.) "The master is the person in whose business he (the negligent employee) is engaged, at the time, and who has the right to control and direct his conduct." St. Louis, I. M. & S. Ry. Co. v. Yates, 111 Ark. 486, 498, 165 S.W. 282, 285.[2]

As is true in many areas of the law, each case involving the loaned servant doctrine must be decided on its own facts. Ordinarily the question whether the general or special employer had the right of control and thus was the employee's master, presents an issue of fact for the jury. Arkansas Natural Gas Co. v. Miller, 105 Ark. 477, 483, 152 S.W. 147, 149–150 (1912); 35 Am.Jur. Master and Servant, § 541 (1941). *See* St. Louis, I. M. & S. Ry. Co. v. Washington, 114 Ark. 184, 192–193, 169 S.W. 770, 773 (1914). But where all of the evidence is in one direction and there is no rational basis for reasonable minds to differ as to the status of the servant the issue is one of law for the court to re-

2. The court's submission of the test to be applied by the jury is not challenged. The jury was fully instructed as to the standard to be applied. It was informed that the parties were in disagreement as to whether Watland was carrying out the construction of the ditch as an employee of Superwood or Hardboard; that the question for the jury to decide was whether in connection with the digging of the ditch Watland was an employee of Superwood, acting in the course or scope of such employment, or an employee of Hardboard; that the controlling test was whether Watland was subject to the direction and control of Superwood not only with respect to the ultimate result to be achieved but also with respect to the details of the work, in which case he would be deemed an employee of Superwood, or whether he was doing the work of Hardboard, and was subject to its direction and control with respect to the result to be achieved and the details of the work, in which case he would be deemed an employee of Hardboard; and that it was the right to direct and control Watland in the digging of the ditch that was determinative of the question of which employer was responsible for Watland's negligent act.

solve. *See,* e. g., St. Louis, I. M. & S. Ry. Co. v. Boyle, *supra,* and St. Louis, I. M. & S. Ry. Co. v. Yates, *supra,* where the court exonerated the general employer from liability when the facts did not show he retained control over the employee. 35 Am.Jur. Master and Servant, § 541 (1941).

Here, Judge Henley, having a firm grasp of the evidence, concluded that under the controlling law the issue of Superwood's liability presented a fact question. We have examined the evidence in the light most favorable to the appellee, as we are required to do, and find ourselves in agreement with the district court.

Throughout the trial Superwood focused upon that aspect of the project concerning the relocation of the effluent line. This is clear from an extended colloquy between Judge Henley and Superwood's able counsel relating to framing the interrogatories or special verdicts to be submitted to the jury. We do not say that counsel for Superwood expressly conceded Watland was under the direction of Superwood in supervising the enlargement of the Hardboard building, but we do say that this inference is implicit in counsel's unsuccessful attempt to have Superwood exonerated by the court. Counsel endeavored to convince the court that the relocation of the effluent line was not regarded by the parties as a part of the original project; that it was not included in the plans and specifications for the enlargement of the building; that the relocation was conceived after the building project was underway, and that Hardboard, and it alone, was responsible for this phase of the overall project. The difficulty with Superwood's position, sound in theory, is found in the evidence from which the jury could find, as it manifestly did, that the relocation was an integral part of the enlargement project. This is clear from Watland's testimony and may be inferred from the testimony of Pierce, the general manager of Hardboard.[3] Moreover, Superwood prepared the drawing for the location of the new effluent line, and Watland was supervising construction of the ditch in accordance with that drawing when the cave-in occurred.

Further discussion of the evidence is not necessary. Considering Superwood's interest in the new project, the fact that Watland was regarded as an expert in supervising construction, that he had acted in that capacity for Superwood on prior occasions, and that he was guided in his work by the plans, specifications, and the drawing, all prepared by Superwood, we are satisfied that a jury case was made. This holding renders it unnecessary for us to discuss the alternative issue of liability, namely, whether Superwood was negligent in preparing the drawing for the construction of the ditch and that such negligence was the proximate cause of the cave-in and appellee's injuries.

Superwood claims that it was prejudiced by the instruction which permitted the jury to consider the parent-subsidiary relationship between Superwood and Hardboard in resolving whether Watland was the servant of Superwood. The instruction informed the jury that it could consider, along with all the other evidence, the relationship between the two corporations. The court cautioned the jury that the mere fact that one corporation is a subsidiary of the other does not mean that the two are one entity, or that the employees of the one are employees of the other and that this is true even though the parent corporation is interested in the conduct of the affairs of the subsidiary.

Superwood condemns the instruction and suggests that it runs counter to Arkansas law against piercing the corporate veil. In our view this is an erroneous assumption. Piercing the corporate veil was not in the case. Appellee made no attempt to hold Superwood for

---

3. Watland testified that the digging of the ditch was "connected with" the expansion of the building. Both he and Pierce testified that Pierce did not give him day-to-day supervision on the project.

the tort of Hardboard in disregard of the separate entities of the two corporations. The case was tried and submitted on the theory that Watland was in fact Superwood's servant at the time the incident occurred which gave rise to the litigation.

■ As shown above, the parties stipulated as to the relationship between the two corporations. This was in the case throughout the trial. Indeed, the bone of contention was whether Watland was Superwood's or Hardboard's employee in connection with the relocation of the effluent line. Since the relationship was a relevant factor the instruction was necessary in order to guide, direct and assist the jurors toward an intelligent understanding of the legal and factual issues in their search for the truth. *See*, Lind v. Aetna Cas. & Surety Co., 374 F.2d 377, 380 (5th Cir. 1967); Marshall v. Isthmian Lines, Inc., 334 F. 2d 131, 137 (5th Cir. 1964); Tyler v. Dowell, Inc., 274 F.2d 890, 897 (10th Cir.), cert. denied, 363 U.S. 812, 80 S.Ct. 1248, 4 L.Ed.2d 1153 (1960); 2B Barron & Holtzoff, Federal Practice and Procedure, § 1105 at 470 (Wright ed. 1961; 9 Encyclopedia of Federal Procedure, § 31.88.[4]

Additional assertions of error relate to the admission of evidence and the refusal of an instruction. These contentions need not be discussed since they relate only to the second issue of liability rendered moot by our holding on the first issue.

■ In summary, we are satisfied that the evidence was sufficient to sustain the jury's finding that Watland was Superwood's servant. The case was tried free of prejudicial error. The judgment is affirmed.

4. The record reveals that after the court submitted its proposed instruction to counsel, Mr. Barron, representing Superwood, was opposed to the court making any reference to the relationship in the instruction. Judge Henley reasoned:

"It seems to me the fact it was a subsidiary cuts several ways. It indicates on the one hand a desire on the part of these corporate owners of both corporations to keep the two establishments separate. After all, this company need not have organized the Little Rock Hardboards at all. They could have chosen to do business here in its own name. It didn't. It set up a separate entity, which it owned, but which is separate. On the other hand, the question of whether—passing employees back and forth, preparing plans and giving directions, the question of whether they strictly observed this corporate entity, whether they in fact made Watland an employee of Hardboard, is to be resolved in the light of the fact that this is a subsidiary and these folks were doing what they were doing. I don't see how we can ignore it. I could not tell this jury not to think about it. I won't go along with you on that at all."