## ARKANSAS LOGGING COMPANY *v.* MARTIN.

### Opinion delivered January 11, 1915.

MASTER AND SERVANT—INJURY TO SERVANT—ACT OF LOANED SERVANT— LIABILITY.—Appellant purchased a machine from C., the contract providing that appellant should have the "services of a man to superintend and assist in the erection of the machine." One S. was sent by C. in compliance with the terms of the contract, and while S. was engaged in the operation of the machine, under the direction and control of appellant's manager, appellee, an employee of appellant, was injured. *Held,* S. was, as to this service, loaned to appellant, who had full charge and control over him and all its employees, and that therefore appellant was liable to appellee for damages due to an injury caused by S.'s negligence.

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge; affirmed.

#### STATEMENT BY THE COURT.

This is an appeal from a judgment for $20,000. The appellee alleged that he was in the employ of the appellant; that appellant was engaged in the logging business; that appellee was a laborer on one of its skidders; that while the skidder was being operated upon appellant's dummy line it was negligently and carelessly turned over and pinned appellee to the ground; that the exhaust pipe burst, causing steam from the pipes to flow upon appellee's body and left leg for about an hour and a half, during all of which time he was conscious and endured great pain and anguish.

The appellant defended on the ground that the appellee, at the time of the injury, was in the employ of the Clyde Iron Works and not in the employ of appellant, and therefore the appellant was not liable.

The appellant, so far as the issues here are concerned, does not deny the negligence and the injuries as alleged, and does not contend that the verdict is excessive. At least, the appellant does not urge any of these as grounds for reversal. We need not, therefore, set out any of the testimony bearing upon these issues.

The appellant offered in evidence a contract under which the skidding machine was purchased by the appellant from the Clyde Iron Works, which contains, among others, the following provision:

"Price to include, without cost to us, services of a man to superintend and assist in the erection of the machine at our railroad at Lorays, Arkansas, and, in addition, his services long enough to properly instruct our men in its manipulation, his board to be furnished by us."

And the testimony of witness Maars, substantially as follows:

That there was a man in the employ of the Clyde Iron Works at the time of the accident, in charge of the skidding machine, whose name was Saltwick. Saltwick was sent there after the stuff arrived to put it together. He took the machine off the two cars and erected it upon one car, that is, he assembled it on one car. All of the men down there at the time Saltwick constructed this machine were in the employ of the Arkansas Logging Company. The logs the men were unloading belonged to the appellant company. The work was being conducted for the benefit of the Arkansas Logging Company. The plaintiff was paid by the company. The men were told where to go to work. They were told that Saltwick was the man to tell them what to do, and they were directed to go down there and undertake to operate this machine under Saltwick. Saltwick told witness to come in and learn how it worked.

The contract made an exhibit to the witness' deposition, which the court excluded, was sent to the appellant company and received by it. Witness did not know what officer received it, but knew it was a contract with the Clyde Iron Works because it was presented to witness. Witness was not an officer of appellant, but it was submitted to witness to look at and read because he read all of appellant's correspondence. Witness was not present when the contract was made; did not see the man sign it, and did not know where the man was that did sign it.

The court excluded the above testimony, to which the appellant duly excepted.

The testimony on behalf of the appellee tended to show that he was employed to work for appellant by one Sofge, who was appellant's superintendent. At the time he was injured he was working for appellant, and was paid by appellant for that day's work. He then described the manner of his injury, which it is unnecessary to set out, as the appellant does not deny that the injury was caused through negligence. Appellee says that just before the skidder turned over he called the attention of the man that was there and had charge of the skidder. His name was Saltwick. He came up and took hold of the lever and threw it on and it turned over and appellee was pinned under. Appellee never saw the man before that was working there. Appellee was directed to work that morning by Mr. Sofge, the Arkansas Logging Company's superintendent. He was directed to work on the skidder that day under the man who had charge of it to demonstrate it. Appellee did not know the name of the demonstrator of the machine at that time or where he came from. His name was Saltwick. The superintendent and general manager of the logging company was there representing the company. The manager was 150 yards away from the machine when it turned over. He instructed everybody and told them what to do when he came down there and they did it. He lived in Memphis. On the skidder with appellee at the time it turned over were two others and Mr. Saltwick. Mr. Sofge had been

around just before the skidder turned over. Saltwick's
business on the machine was pulling the drum. When ap-
pellee found the drum would not work he spoke to Salt-
wick. Saltwick got on the machine. Appellee was the
lever man. When Saltwick got on the machine he said:
"Leave me have it, Mr. Martin," (meaning the lever).
He took it and threw it wide open and the machine turned
over. He further testified that he was directed by Sofge
to work with Hallock and Mr. Saltwick on the skidder.
He called on Saltwick when he could not operate the
lever, because he thought he was the proper one to call
on. There was no one else there that had had any ex-
perience with that kind of machinery, and Saltwick was
the man under whom appellee was directed to work.

Another witness for the appellee testified that he
was working on the loader just before the skidder turned
over, and Mr. Maars and the president of the appellant
company were with witness, and witness said to the presi-
dent, "That skidder is turning over down there; what
must we do?" and he said, "Go down there and see about
it." Witness further testified that the secretary and
treasurer of the appellant company directed the men to
go down there that morning to work on the skidder; that
they were working for the appellant, hauling logs for it,
and it was appellant's track on which the skidder was set.
Saltwick was the man sent there by the Clyde Iron Works.
Mr. Martin was directed to work under Saltwick, the
demonstrator for the Clyde Iron Works.

The manager of the appellant testified that Saltwick
was the demonstrator of the machine and had no other
business down there except with that particular skidder,
operating and demonstrating the machine; he did not
do anything else.

At the conclusion of the testimony, the appellant
presented the following prayer for instruction:

"In going upon the skidder, plaintiff assumed all
risks incident to such work, and is not entitled to re-
cover, unless you find from a preponderance of the evi-

dence that defendant was guilty of gross negligence in not providing plaintiff a safe place to work.''

The court refused the prayer and appellant duly excepted.

The appellant asked the court to instruct the jury as to the law of contributory negligence on the part of the plaintiff. The court refused and appellant excepted.

The court then instructed the jury, over the objection of the appellant, as follows:

''If you find from a preponderance of the evidence that on the 26th day of August, 1912, the plaintiff was employed as a laborer by the defendant company, and was directed by its foreman or manager to work on the skidder under the direction of one Saltwick, and that while so engaged the skidder was overturned by reason of the negligence and carelessness of said Saltwick in operating the same, and that plaintiff was injured thereby, then you should find for the plaintiff, and assess his damages as hereinafter directed.''

Then follows an instruction on the measure of damage, to which no objection is urged in appellant's brief.

*De E. Bradshaw, Lewis Rhoton* and *T. E. Helm,* for appellant.

It was error to exclude the deposition of Maars, and to refuse to permit the introduction and evidence of the contract which contained the stipulation in reference to the erection of the skidder. This evidence showed that at the time of the injury the person causing the same was in no way connected with the appellant as its servant, agent or employee, and its exclusion was reversible error. 165 S. W. 282; 16 Ill. App. 322; 24 Pa. Sup. Ct. 241; 30 N. E. 294; 36 L. R. A. 382; 53 *Id.* 172.

The contract did not create the relation of master and servant between appellant and Saltwick, the employee of the iron company. 88 Pac. 439; 95 Pac. 398; 104 S. W. 495.

The ordinary relation of master and servant does not subsist in the case of an independent employee or

contractor who is not under the immediate direction of the employer. 109 S. W. 240; 113 S. W. 914.

If the relation of master and servant did not exist between appellant and Saltwick, the injury to appellee was, necessarily, not the act of appellant's agent, and hence it would not be liable. *Supra;* 57 L. R. A. 712; 37 L. R. A. 33; 24 L. R. A. 963; 22 So. 359; 62 N. E. 245; 144 N. W. (Minn.) 938.

*E. E. Hopson, James C. Knox* and *Robert C. Knox,* for appellee.

1. The court properly excluded the purported contract offered as an exhibit to the testimony of the witness, Maars, it amounting to nothing more than hearsay, because he was not an officer of the company, had nothing to do with passing upon it, did not see it executed, and knew nothing about it further than that he had read it and it had been told that it was the contract between the parties. There was no proof of its execution. 4 Enc. of Ev. 289a; 13 Ark. 63; 81 Ark. 1; 115 Fed. 678; 25 S. E. 526; 114 S. W. 277; 17 S. W. 979; 43 S. W. 852; 40 S. W. 422; 48 S. W. 751; 20 S. W. 63; 112 S. W. 430; 2 Ark. 315; 21 Ark. 349; 4 Ark. 251; 17 Ark. 203, 218.

2. The fact that Saltwick was at the time of the injury in charge of appellant's property makes a *prima facie* case that he was the servant of appellant, and the burden, therefore, rested on appellant to show that he was not in its employ. 41 N. Y. 42; 109 Pac. 329.

Where the determination of whether or not the relation of master and servant exists depends upon the construction of a written contract, it is a question for the court alone. 1 Labatt, M. & S., 17; 2 Parsons on Contracts 492.

The wording of the contract shows that it was the intention of the parties to lend Saltwick to the appellant company. The use of the word "assist" shows that he was to be under the control and direction of the logging company; and his being in control and possession of its property with its knowledge and consent, would make appellant liable, regardless of whose servant he

was. 98 S. W. 84; 103 Mass. 194; 74 Pa. 316; 81 Conn. 493, 71 Atl. 572; 23 Times, L. R. 433; 1 Labatt, M. & S., 26; *Id.* 31a.

WOOD, J., (after stating the facts). Conceding that exceptions were properly saved to the ruling of the court in rejecting the offered testimony of witness Maars and that this testimony was competent, there was no prejudicial error in the ruling of the court, for the reason that if the testimony and the part of the contract offered had been read the result could not have been different. For, as we view the undisputed evidence, considering the excluded testimony and the paragraphs of the contract as a part of the evidence, the court correctly instructed the jury that if the appellee was employed by the appellant and was directed by its foreman or manager to work on the skidder under the direction of one Saltwick, and that the skidder was overturned by reason of the negligence of Saltwick in operating the same, resulting in appellee's injury, that the appellant would be liable in damages therefor. In other words, the excluded testimony, including the provisions of the contract, when the latter are properly construed, did not tend to show that Saltwick at the time of the injury, was not, as to the service he was performing, the servant of the appellant. On the contrary, we think the clauses of the contract under review and the undisputed evidence show that at the time of appellee's injury Saltwick, who was there for the purpose of operating the machine and for the purpose of demonstrating the same, in order to see whether it worked properly, and for the purpose of instructing appellant's employees how to manipulate it, was, while in the performance of that service, the servant of the appellant.

The provisions of the contract under review show that the appellant was to have the "services of a man to superintend and assist in the erection of the machine," and "to properly instruct our (appellant's) men in its manipulation." This provision of the contract clearly shows that this man, furnished by the Clyde Iron Works,

was to perform services for or to be in the service of the appellant, superintending and assisting in the erection of the machine and instructing appellant's men as to how to operate the same. While performing this service for appellant and as appellant's servant in so doing, under the contract with the Clyde Iron Works, the cost of the service, or wages, to be paid the servant, except the item of board, was to be borne by the iron works. But Saltwick's relation to the appellant, as we view the undisputed evidence, while engaged in the work of demonstrating and operating the skidder, was that as already stated of servant of the appellant. The case is ruled by the following excerpt from *Coughlan* v. *Cambridge,* 166 Mass. 268, 44 N. E. 218: ''It is well settled that one who is the general servant of another may be lent or hired by his master to another for some special service, so as to become, as to that service, the servant of such third party. The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired.''

We quoted this language in the recent cases of *Arkansas Natural Gas Company* v. *Miller,* 105 Ark. 477, and *St. Louis, I. M. & S. Ry. Co.* v. *Yates,* 111 Ark. 486. In the latter case we also quoted the following from Sherman & Redfield on Negligence, (4 ed.), 269: ''Servants who are employed and paid by one person may, nevertheless, be *ad hoc* the servants of another in a particular transaction, and that, too, where their general employer is interested in the work. They may, without consulting their master, but in good faith, assist a person independently employed to do something which shall benefit their master, but with which neither he nor they have any right to interfere, and in which they act entirely under the control of such other person. In none of these cases is the nominal master responsible to strangers for their acts or omissions.''

Since appellant does not deny that appellee was injured through the negligence of Saltwick, it follows that

if Saltwick, while operating and demonstrating the skidder, *ad hoc* was the servant of appellant, then the latter would be liable. Treating the evidence of Maars and the contract as a part of this record, the undisputed facts present a typical case for the application of the above doctrine. Saltwick was in the general employ of the Clyde Iron Works, and paid by it, but under the contract of sale between it and the appellant the Clyde Iron Works was not to erect the skidder nor to superintend its erection. It had no duties to perform with reference thereto as an independent contractor. It was not in the control of the operation of the machine. It did not have the control of the erection of the machine; nor while it was being operated by its agent Saltwick, for the purpose of demonstrating and assisting the employees of appellant in understanding the same, was it under the control of the Clyde Iron Works. While under the contract between appellant and the Clyde Iron Works, it was contemplated that the appellant should have the "services of a man to superintend and assist in the erection of machine," the contract shows plainly that the services of this man were to be performed for appellant and that as to these services the man was appellant's servant. The contract did not even require that the man should be a general servant of the Clyde Iron Works. For aught that appears in the contract to the contrary, appellant might have employed any man to superintend and assist in the erection of the machine, regardless of whether he was in the general employ of the Clyde Iron Works or not. The contract only provided that pay for this service was included in the contract price which appellant had agreed to pay the Clyde Iron Works for the machine. The contract specified that the purchase price included the services of a man to "superintend and assist" in the erection of the machine, but it did not specify, and it was not necessarily implied, that such man should be selected or furnished by the Clyde Iron Works. The proof does not show that the appellant relinquished control over the work of erection and operation of the ma-

chine, nor the work of demonstration under the superintendence of Saltwick, in order to show appellant's employees how they should operate the machine. The supreme control of the operation of this machine at the time appellee received his injury was under appellant, and not the Clyde Iron Works. The latter company, as an independent contractor, owed appellee no duty; and if it had been sued along with the appellant, no judgment could have been recovered against it.

While the case of *Tuttle* v. *Farmers' Handy Wagon Co. et al.*, 144 N. W. 938, relied upon by the appellant, is quite similar in some of its features, yet in essential particulars it is differentiated from the facts of the case at bar. In that case a man by the name of Clow had purchased from the Farmers' Handy Wagon Co. a silo. By the terms of the contract "Clow was to relieve himself from the responsibility of superintending the work of erection, and had imposed that responsibility upon the company. Under the contract, the man to superintend the work was to be selected and paid by the company. Clow had no voice in his selection and was not given any control over him.   *   *   *   He was not directed to report to Clow for orders, nor to perform such duties as might be assigned him by Clow, but was sent to take charge of and direct the work for the purpose of fulfilling the obligation assumed by the company. So far as appears he acted wholly under and pursuant to the instructions of the company. He did not place himself under the orders of Clow, and Clow made no attempt to exercise control over him.   *   *   *   Assuming to act as the representative of the company, he took entire control of the work and of the workmen furnished by Clow at his request."

Now, under the contract here, the facts are different. Here appellant's general manager was on the ground. Its superintendent was present, directing its employees, and its skidder foreman was in charge of the skidder. Saltwick was merely superintending and "assisting" these men in the work of operating and demonstrating

the machine after the same had been erected. He was, as to that service, simply for the time being, loaned or furnished to the appellant, and appellant had full charge and control over him and all of its employees, including appellee, that were working at the time under the directions of Saltwick. The facts are so closely analogous to the facts in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Gates, supra,* as to make the doctrine of that case applicable and controlling here. Saltwick occupied the same relation to appellant here, that Claus did to the railway company in the above case.

The court did not err in refusing to give an instruction on the law of contributory negligence. There was no evidence to warrant such an instruction. Appellant's prayer for instruction on assumed risk was not in correct form and was not the law applicable to the facts proved.

The record is free from error, and the judgment is therefore affirmed.