KATHLEEN BAILEY DONAHUE, ADMINISTRATRIX, ET AL. v. CAM L. COWDREY, D/B/A ROSEDALE PLUMBING CENTER

5-4849                                      440 S.W. 2d 773

Opinion Delivered May 26, 1969

---

[5] Ark. Stat. Ann. § 27-208 (Repl. 1962) is identical to this section

*Martin, Dobbs, Kidd, Hendricks & Ryan* and *Tom Gentry* for appellants.

*Barber, Henry, Thurman, McCaskill & Amsler* for appellee.

GEORGE ROSE SMITH, Justice. In 1965 Curtis Roy Donahue was killed and Preston Brown injured when the sides of a deep narrow trench in which they were laying sewer pipe caved in, burying both men until rescuers dug them out. These actions for wrongful death and personal injuries were brought against the appellee, Cam L. Cowdrey, whose equipment was being used to excavate the trench. The cases were consolidated for trial. This appeal is from a verdict and judgment for the defendant. The principal arguments for reversal center upon the court's instructions to the jury.

At the trial the principal issue of fact, as developed by the proof offered by the plaintiffs and by the defendant, involved the application of the borrowed-servant doctrine. Donahue and Brown were both employed by

Clint Reynolds Plumbing Company. Reynolds had agreed to install for Thibault Milling Company a sewer line running from the Thibault mill to a city sewer main 400 feet away. The line was to slope gradually from the mill to a maximum depth of nine feet at its far end.

Reynolds was not equipped to dig such a deep trench. As in earlier similar situations Reynolds arranged for Cowdrey to furnish a backhoe, with an operator, to make the excavation. The operator, Edward Vance, was a regular employee of Cowdrey. On the day of the accident the entire work crew, including Vance, Donahue, Brown, Clint Reynolds, and others, began the trench at its deepest point and worked toward the Thibault mill. The trench was only two feet wide, that being the width of the backhoe's dredging bucket. The trench collapsed after the work had progressed for almost 100 feet.

The plaintiffs charged that Cowdrey and the backhoe operator were negligent in not bracing the excavation with timbers, in driving the backhoe too close to the trench, and in other respects that need not be detailed. Cowdrey's principal defense, as far as this appeal goes, lay in the borrowed-servant doctrine, under which Cowdrey asserted that at the time of the accident Vance was working exclusively for Reynolds (whose liability to the plaintiffs was covered by the workmen's compensation law). That defense presented a question of fact for the jury.

Upon the broad issue of the employer-employee relationship the court gave AMI 701, defining 'employee,' AMI 702, defining 'scope of employment,' and AMI 703, permitting the jury to consider Cowdrey's ownership of the backhoe and his regular employment of Vance as facts bearing upon the Cowdrey-Vance relationship at the time of the accident.

AMI contains no instruction on the borrowed-servant rule. Over the plaintiffs' objections the court gave the following instructions upon that aspect of the case:

## INSTRUCTION No. 15

One who is in the general employment and pay of another may be loaned or hired by his general or original employer to a third party for the performance of some particular services for such third party. If the original or general employer, and not the third party, retains the right to control and direct the conduct of the employee in the performance of such services then the original or general employer will be treated as his employer, with respect to such services. On the other hand, if the third party to whom the employee is loaned or hired has the right to direct and control the conduct of the employee in the performance of such services, then the third party will be considered his employer.

## INSTRUCTION No. 16

In order for the plaintiffs, Kathleen Bailey Donahue, Administratrix of the Estate of Curtis Roy Donahue, Deceased, and Preston Brown, to recover against the defendant, Cam L. Cowdrey, d/b/a Rosedale Plumbing Center, you must find from a preponderance of the evidence that Edward Vance was, at the time of the occurrence, the employee of the defendant and acting within the scope of his employment.

If the services of Edward Vance were loaned or hired by the defendant to a third party and Vance was required to proceed in the performance of his work entirely under the control and direction of such third party, then he was the employee of such third party and your verdict should be for the defendant.

In attacking instruction number 16 the appellants rely generally upon the contention that a binding instruction is fatally defective if it omits an essential element of liability or defense and specifically upon our applica-

tion of that principle in *Phillips Coop. Gin Co.* v. *Toll,* 228 Ark. 891, 311 S.W. 2d 171 (1958).

The *Phillips* case is not so similar to this one as to be a controlling precedent on its face. There the borrowed-servant rule was not involved at all. A binding instruction was held to be bad (*a*) because it listed only two of the several elements to be considered in distinguishing an employee from an independent contractor and (*b*) because it contained a comment on the weight of the evidence. In the case at bar neither instruction 15 nor instruction 16 contained such a comment; so the applicability of the *Phillips* case turns upon whether number 16, which alone was binding, violated the requirement that such an instruction be reasonably complete within itself.

We are not willing to say that number 16 was fatally defective. In that instruction the trial court did not attempt, as in the *Phillips* case, to enumerate the various specific facts that were pertinent to the jury's determination of the question at issue. Here the problem was that of determining Vance's status: regular employee or borrowed servant. Several of the facts pertinent to that inquiry are discussed in the Restatement of Agency (2d), § 227, Comment *c* (1958). By way of illustration we take from that discussion three such facts: Vance's comparative skill as a specialist; whether the backhoe was of considerable value; and whether Cowdrey could have substituted another operator for Vance at any time.

Obviously that method of approaching the problem— the enumeration of specific facts bearing on the issue— was not adopted in instruction 16. Instead, the instruction merely referred to the ultimate fact of control, leaving counsel free to argue the specific subordinate elements to the jury. As we read the record, several of the specific pertinent facts were favorable to the plaintiffs. That is, Cowdrey owned the backhoe; the backhoe was a valuable piece of equipment; Vance was a reg-

ular employee of Cowdrey; Vance was a skilled operator; Cowdrey could have substituted another operator for Vance; and Cowdrey was apparently in the business of supplying such equipment, together with an operator, to others. Under the court's actual instructions counsel doubtless argued to the jury all those component parts of the ultimate factual question. If the plaintiffs wanted the added advantage of having the court enumerate such factors to the jury in an instruction, it was the plaintiffs' duty to draft and submit such an instruction. That duty could not be shifted to the court or to the defendant by the objection made by the plaintiffs to the instruction —that "it does not contain all the elements of master and servant relationship or principal and agent relationship under the law." That objection was really more general than specific, since it did not assist the court in supplying whatever elements the plaintiffs thought to be missing from the instruction as tendered.

We see nothing inherently wrong in instructions 15 and 16, when they are read together. (That they may be so read, see *Hearn* v. *East Texas Motor Freight Lines*, 219 Ark. 297, 241 S.W. 2d 259 [1951].) Number 15 explained that an employee may be lent to a third person or may be retained in the service of his regular employer, the test being the right of direction and control. Number 16 carried that explanation of the law to its natural conclusion by stating that if Vance's services had been lent to a third person (Reynolds) so that Vance was required to proceed with his work "entirely" under that person's control and direction, then Vance was the employee of that person, and the verdict should be for the defendant.

The suggestion is made that number 16 should have followed the language of number 15 by referring to the "right to control and direct" rather than to "the control and direction" of the third party. Unquestionably, however, instruction 16 was a substantially correct statement of the law; so the criticism now made about its

phraseology should have been put in the form of a specific objection to the language selected.   *St. Louis, I.M. & S. Ry.* v. *Stacks,* 97 Ark. 405, 134 S.W. 315 (1911) ; *St. Louis, I.M. & S. Ry.* v. *Carter,* 93 Ark. 589, 126 S.W. 99 (1910).   Had such an objection been made the court would no doubt have suitably modified the requested charge.

The appellants' other contentions for reversal do not require extended discussion.   During the trial an objection was made by the defendant's attorney to the use of the word 'employee' in a question put to a witness.   In ruling upon the objection the court explained to the jury that the case would turn upon whether "in your opinion, in your judgment," Vance was working on the particular occasion under the supervision and control of his own employer or of Reynolds.   The plaintiffs' attorney objected to the court's remarks as a comment on the evidence and asked for a mistrial.

The request was properly overruled.   The court expressed no opinion of its own, making it clear that the question would be for the jury's determination, under the guidance of instructions to be given later on. The granting of a mistrial is an extreme measure, to be resorted to only when "it must be apparent that justice cannot be served by a continuation of the trial."   *Back* v. *Duncan,* 246 Ark. 438 S.W. 2d 690 (1969).   Here there was no possibility of such a miscarriage of justice.

A third complaint is that the court refused to allow the plaintiffs' attorney to ask Reynolds if he had shored up the sides of the trench in completing the job after the cave-in.   It is argued that a negative answer would have weakened Reynolds' credibility, because he had stated earlier that he would have braced the excavation in the first place if he had thought it to be dangerous.   There was, however, no offer of proof that Reynolds' answer would have been in the negative.   An affirmative answer would have been inadmissible, under the rule of

public policy that excludes proof of precautions taken to prevent the recurrence of an accident assertedly caused by negligence. See Comment, 3 Ark. L. Rev. 431 (1949). Hence the required showing of prejudice has not been made. *New Hampshire Fire Ins. Co.* v. *Blakely,* 97 Ark. 564, 134 S.W. 926 (1911).

Lastly, it is insisted that the court should not have given AMI 206, which told the jury that Cowdrey. asserted negligence on the part of the plaintiffs as a defense and had the burden of proving that assertion. It is argued that the instruction had no support in the evidence, there being no proof of negligence on the part of Donahue or Brown. The jury, however, might have been justified in believing from their own common knowledge and experience that the two workmen were careless about their own safety in entering a trench that was nine feet deep and only two feet wide. The unexplained cave-in provided support for that view. Hence we are of the opinion that the court was right in giving the instruction.

No error being shown, the judgment must be affirmed.