STEEL ERECTORS, Inc. and James W. GIPSON
v. Buell Ray LEE

5-6018                                          484 S.W. 2d 874

Opinion delivered July 17, 1972

[As amended on Denial of Rehearing October 2, 1972.]

152

*Dobbs, Pryor & Hubbard,* for appellants.

*Sam Sexton Jr.* and *Warner, Warner, Ragon & Smith,* for appellee.

CARLETON HARRIS, Chief Justice. the principal question in this litigation is whether James W. Gipson, a regular employee of Steel Erectors, Inc., an Arkansas Corporation with its place of business at Fort Smith, appellant herein, was a borrowed servant of Brown & Root, Inc., a construction company engaged in the performance of pipe line work for Arkansas Louisiana Gas Company, at a time when Buell Ray Lee, a Brown & Root employee, was injured. Steel Erectors rented a motor crane to Brown & Root for construction work near Driggs, Arkansas. The rental of the crane included an operator for the machine, Gipson, as stated, a regular employee of appellant. The crane is motorized and may be driven but the boom (lifting mechanism) has to be separately transported on a truck. On July 14, 1968, the crane was taken to a place near the job site, and the boom was taken to the same location on the morning of July 15, both pieces of equipment being transported by Gipson. The crane would not start and in an effort to start it, an attempt was made to connect a chain between the truck and the crane with the intention of starting the crane by pulling it. Lee was attempting to fasten the chain to the truck when that ve-

hicle commenced to move forward, catching Lee's hand in the chain and causing the injuries herein complained of. Thereafter, appellee instituted suit against Gipson and Steel Erectors for his injuries and on trial, the jury returned a verdict in his favor in the amount of $40,000. From the judgment so entered, appellants bring this appeal. For reversal, several points are relied upon which we proceed to discuss.

I

It is first asserted that the court erred in refusing to direct a verdict in favor of Steel Erectors on the ground that Gipson was a borrowed servant of Brown & Root, and Steel Erectors is not liable for his actions.

We do not agree, but will only refer to some of the evidence which presented a fact question and thus one for the jury to determine. There was testimony to the effect that the rent on the machine did not commence until it was in operating condition and Brown & Root would not owe any rent for any period of time that the machine was unable to operate or being repaired. At the time of the accident, and before any work was commenced, Gipson was endeavoring to start the machine. Gipson, Sonny Bowman, an employee of Brown & Root, and Lee were endeavoring to start the crane after the starter mechanism would not function. They first tried to "jump it" with cables, and then decided to pull it with the truck in an effort to get it to start. Bowman was to drive the crane, Lee was to do the tieing of the chain, and Gipson was to drive the truck. Gipson let the truck roll forward in order to take the slack out of the chain, this witness stating that he understood Lee to be signaling him to do so. Upon being asked what happened when he went forward to take the slack out, Gipson replied:

> "Well, I saw Mr. Lee back there still nodding his head or trying to wave at me, looked like. So I started the truck to back up. Then I saw Mr. Lee come out from between the truck and the rig holding his hand."

In addition to the fact that there is evidence reflecting that the accident occurred before the crane was put into

operation, it also appears that the crew and equipment had not reached the actual job site. Gipson worked for four days and there is evidence that he was paid for those services entirely by Steel Erectors. In *Natural Gas & Fuel Corporation* v. *Alotto*, 178 Ark. 461, 11 S.W. 2d 769, we mentioned this as a circimstance, along with others, as indicating under whose authority Alotto was acting. There were also inferences in the testimony that a part of Gipson's duties included looking after the crane for the benefit of Steel Erectors. Appellee argues that actually he was entitled to a directed verdict and that there is no evidence from which a jury could have concluded that Gipson was the borrowed servant of Brown & Root Construction Company; that this was not alleged as a defense in the answer, and that the sole evidence is that Gipson was engaged in an effort to get the crane started, work which was solely for the benefit of Steel Erectors. While appellant did not specifically allege that Gipson was the borrowed servant of Brown & Root, the answer did deny that he was an employee of Steel Erectors, Inc., and denied that he was acting within the scope of his duties with Steel Erectors at the time of the injury. Nor do we agree that all the evidence reflected Gipson to be acting under the authority, and within the scope of his employment with appellant company. Sonny Bowman testified that the three, Gipson, Lee, and Bowman were acting under the control and direction of Jimmy Williamson, foreman for Brown & Root, and he said that Williamson had assigned him to work with Gipson on that particular day. Lee testified to the same set of facts, stating that Williamson assigned him to work with Gipson on this occasion. Kenneth Matthews, acting as a dispatcher for Steel Erectors, Inc., testified that he dispatched Gipson, directing him to report to Brown & Root and Williamson, and follow their orders, and that neither he, nor any other person associated with appellant, as far as he knew, gave any other orders to Gipson. Gipson testified that he was directed to report to Williamson, and do whatever he was told to do during the time he was there. Of course, the question in the litigation relates to which corporation had control of, and the right to control, Gipson at the time of the accident, and we think a fact question was presented by the evidence. As stated in *Arkansas Natural Gas Company* v. *Miller,* 105 Ark. 477, 152 S.W. 147, the question was whether one

Pitts, who caused an injury to another employee, was under the control of one company or another at the time of the injury. We said:

"To the extent that Pitts was working under the direction and control of the defendant, he remained the latter's servant, and it alone is responsible for his negligence. On the other hand, to the extent that the direction and control was surrendered to the contractors for work being done by them, Pitts was in their service, even though he was in the general employment of the defendant, and the contractors alone are liable. It was the peculiar province of the jury to determine from the testimony the extent to which Pitts was acting for the defendant and was carrying out its directions, and to what extent he was performing service for the benefit of the contractors and under their direction and control."

That language is *apropos* in the present case.

It is next asserted that the court erred in giving instruction number 13 (offered by appellee), the instruction being a comment on the evidence, assuming facts not shown by the evidence, unduly emphasizing evidence in favor of appellee, and in effect, directing the jury to find for appellee on the issue of borrowed servant. The instruction complained of reads as follows:

"The motor crane and the truck involved in this incident were owned by Steel Erectors, Inc.; James C. Gipson was the regular employee of Steel Erectors, Inc.; James C. Gipson was a skilled operator of the motor crane; the motor crane was a valuable piece of equipment; and, Steel Erectors, Inc. was engaged in the business of supplying the motor crane, with James C. Gipson as operator, to others. In addition, James C. Gipson was charged by Steel Erectors, Inc. with the duty of properly operating the motor crane and with making the required minor repairs.

You may consider these facts along with any other evidence in the case in deciding whether James C. Gip-

son was acting as an employee of Steel Erectors, Inc. and within the scope of his employment at the time of the occurrence."

Counsel for Steel Erectors objected to the instruction, on the grounds that it constituted a comment on the evidence and unduly emphasized certain factual elements that should be left to the argument of counsel. Those same objections are renewed here as a point for reversal.

Counsel are correct in asserting that the instruction embodies comments on the evidence. In the instruction the court stated as a fact that Gipson was a skilled operator of the crane. There was testimony that he was very competent and qualified, and that he was experienced, but the statement that he was skilled must have been understood by the jury as the court's interpretation of the evidence. Again, the instruction stated as a fact that the crane was a valuable piece of equipment. There was no direct testimony to that effect. Here, counsel for the appellee merely cite a statement in the record that the crane was rented for $14.50 or $14.75 an hour. The cost of operating the crane is not shown. Accordingly, the inference that the crane was valuable was necessarily the trial court's conclusion from the proof. It is, however, the jury's exclusive province to weigh the evidence and draw inferences of fact not established by direct proof. We conclude that instruction 13 violated the constitutional prohibition against a judge charging the jury with regard to matters of fact. Ark. Const., Art. 7, § 23.

Since the foregoing error requires a new trial, it is appropriate that we take this opportunity to modify and limit a statement that appeared in *Donahue* v. *Cowdrey,* 246 Ark. 1028, 440 S.W. 2d 773, for otherwise that statement might lead to an additional error upon the retrial of this case or in other litigation. In the *Donahue* case the trial court gave AMI 701, 702, and 703. The court also gave correct instructions, in general language, explaining the difference between an employee acting for his regular employer and that employee acting as the borrowed servant of another. The instructions, which we approved, did not enumerate specific facts bearing upon the distinction in question. In affirming the judgment, however, we made

these observations, as *dicta*: "Under the court's actual instructions counsel doubtless argued to the jury all those component parts of the ultimate factual question. If the plaintiffs wanted the added advantage of having the court enumerate such factors to the jury in an instruction, it was the plaintiffs' duty to draft and submit such an instruction."

We are now convinced that no such enumeration (beyond the basic facts contained in AMI 703) should be attempted. As this case demonstrates, a request for such an instruction imposes upon the trial judge the burden of deciding whether the facts to be enumerated have been established by undisputed proof. Moreover, such a recital of facts tends to slant the charge in favor of one side or the other. It thus runs counter to our per curiam order approving AMI, which requires instructions to be "simple, brief, impartial, and free from argument." See also the later case of *Wharton* v. *Bray,* 250 Ark. 127, 464 S.W. 2d 554, where we sustained the trial judge's refusal to give an abstractly correct instruction, because it did not conform to the AMI per curiam order. We accordingly disapprove the quoted language in *Donahue* v. *Cowdrey, supra.*

Complaint is made that interrogatory No. 3 was ambiguous and does not require the jury to find whether or not Gipson was a borrowed servant. The interrogatory reads as follows:

"Do you find from a preponderance of the evidence that James W. Gipson was acting within the scope of his employment as an employee of Steel Erectors, Inc. at the time of the occurrence?

Answer Yes or No"

It is contended that the interrogatory is confusing in that it expects the jury to appreciate, understand, and differentiate between general employment and special employment or borrowed servant. Frankly, if no other error had been committed by the trial court, we would not reverse under the argument here made, but inasmuch as the judgment is being reversed under the second point, we

think that the interrogatory could be stated perhaps more clearly, and more fairly, according to an alternate interrogatory suggested by appellant, *viz*:

"Do you find that J. W. Gipson was an employee of Steel Erectors within the scope of his employment, or was he a borrowed servant of Brown and Root?"

This interrogatory certainly covers the theories of both appellant and appellee and states them in the same sentence, precluding any possible advantage to one side or the other. This interrogatory could be given with appropriate answers supplied by the court.

It is also asserted that the court erred in failing to declare a mistrial due to alleged prejudicial testimony concerning insurance during the trial. Again, the case being reversed under point 2, there is no need to discuss this contention since appellee argues that the mention of insurance by one of his witnesses was entirely accidental, and, that being true, the asserted error will not again occur.

Finally, it is urged that the judgment was excessive, but of course, that question has now become moot.

Because of the error under point 2, the giving of instruction No. 13, the judgment is reversed, and the cause is remanded to the Logan County Circuit Court for further proceedings not inconsistent with this opinion.

It is so ordered.

## Supplemental Opinion on Rehearing delivered October 2, 1973

APPEAL & ERROR—PARTIAL REVERSAL—REVIEW.—When a judgment against multiple tortfeasors is reversed, substantial justice requires a reversal as to all defendants where it appears that a different verdict would probably or possibly have been rendered against the remaining defendant if that defendant had been sued alone, or if the jury had realized that the remaining defendant would be solely liable.

CARLETON HARRIS, Chief Justice. On rehearing, appellee points out that the erroneous instruction which occa-

sioned the reversal only adversely affected the rights of appellant, Steel Erectors, Inc., and accordingly the judgment against Gipson should be affirmed. The case of *Nowlin-Carr Co.* v. *Cook,* 171 Ark. 51, 283 S.W. 7, is cited as authority. We cannot agree that this case is applicable. There, judgments were entered against Nowlin-Carr Co. and H. Flanagin. On appeal, the judgment against Nowlin-Carr was reversed, but the judgment against Flanagin was allowed to stand. However, the latter was *found to be an independent contractor,* while in the case before us, Gipson was found to be an employee of Steel Erectors at the time of the accident; this, of course, is a vastly different relationship. In addition, in *Cook,* the judgment against Nowlin-Carr was reversed and dismissed, while here the case was remanded for another trial as to Steel Erectors. It is provided in Ark. Stat. Ann. § 27-2144 (Repl. 1962) that this court may reverse, affirm, or modify the judgment or order appealed from, in whole or in part, as to any or all parties, and while we agree that a reversal as against one does not necessarily mean there should be a reversal against the other, we think the circumstances of this particular case require a reversal as to both.

In 5 Am Jur 2d, 377, § 950, Appeal and Error, it is stated:

"Although the early common-law rule was different, in most jurisdictions today, a judgment against multiple tortfeasors may be reversed as to one such defendant without affecting the judgments as to the others. This rule has been embodied in statutes in some jurisdictions. However, even under the 'modern' rule, the courts will not enter such a partial reversal where substantial justice requires a reversal as to all defendants, as where it appears that a different verdict would probably or possibly have been rendered against the remaining defendant if that defendant had been sued alone or if the jury had realized that the remaining defendant would be solely liable."

In *Washington Gaslight Co.* v. *Lansden,* 172 U.S. 534 (Court of Appeals D. C.), a libel suit was instituted against a corporation and its officers. A single verdict was render-

ed against the corporation and two officers. On appeal, it was held that error was committed as to the corporation, but not as to the two officers. The court however reversed the case in its entirety, pointing out that the original verdict was against all three defendants and it was possible, if not probable, that if a verdict had been rendered against the individual defendant alone, it would have been for a materially lesser amount. The court said:

"At any rate, the jury has never been called upon to render a verdict against a sole defendant, and while it may be said that whether against one or against all the defendants, the plaintiff suffers the same damage and should be entitled to a verdict for the same sum, still the question arises whether a jury, in passing upon the several liability of the individual defendants, would give a verdict of the same amount as it would if both the other defendants remained. ****

Where the judgment is based upon a cause of action of such a nature that it might work injustice to one party defendant, if it were to remain intact as against him, while reversed for error as to the other defendants, then we think the power exists in the court, founded upon such fact of possible injustice, to reverse the judgment *in toto* and grant a new trial in regard to all the defendants."

See also *Courtney v. American Express Co.,* 113 S.E. 332 (South Carolina), where it was stated:

"It would be manifestly unjust, if there were no errors in the trial affecting Park, to allow a judgment of $5,000 to stand against him alone, in the uncertainty that, if not yoked up with the company, such a verdict would have been rendered against him."

In line with the reasoning of the cases cited, we are certainly unable to say that, in an action against Gipson alone, the jury would have rendered a verdict for the same amount in damages, and we think simple justice requires a reversal *in toto*.

Petition denied.