**MISSOURI PACIFIC RAILROAD COMPANY, Appellee,**

v.

**CHAMPLIN & WELLS, INC. and Northeastern Fire Insurance Company of Pennsylvania, Appellants.**

No. 85–1209.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 18, 1985.

Decided Oct. 17, 1985.

Bert N. Darrow, Cabot, Ark., for appellants.

Michael G. Thompson, Little Rock, Ark., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

PER CURIAM.

In this diversity suit Champlin & Wells, Inc. was adjudged liable in contribution under Arkansas law to Missouri Pacific Railroad Company in an amount equal to 95% of a settlement reached between Missouri Pacific and Clifford W. Clarke. The settlement was of an F.E.L.A. claim Clarke had brought against the railroad for personal injuries. Champlin & Wells and its liability insurer, Northeastern Fire Insurance Company of Pennsylvania, now appeal from the district court's judgment,[1] contending that tortfeasor Steven Conder was acting for Missouri Pacific as a "borrowed servant" at the time Clarke was injured, and that Champlin & Wells therefore should not have been held responsible for Conder's negligence. We affirm.

By written contract dated August 20, 1975, Champlin & Wells agreed to furnish Missouri Pacific with "one (1) fork lift ... fully manned and maintained with all supplies, to unload and handle Carrier's track material and secure track panels on Carrier's cars at the Track Panel Facilities in North Little Rock, Arkansas." The contract set hourly rates at which Champlin & Wells would be paid for labor and equipment. The contract also stated "[t]he Contractor shall at all times be and remain an independent contractor hereunder, and Carrier shall have no control over the employment, discharge, compensation, and services rendered by Contractor's employ-

ees or agents." Work under the contract was to be "prosecute[d] with diligence and complete[d] in a substantial and workmanlike manner, and to the express satisfaction of Carrier's Contracting Officer."

Various individuals testified at trial about the manner in which the parties operated under this contract. Champlin & Wells hired and paid its own employees, but instructed them to do whatever railroad personnel told them to do. An assistant roadmaster for Missouri Pacific would tell the forklift operator what to move and where to move it; he did not give instructions regarding the operation of the forklift. Champlin & Wells typically did not supervise or monitor its forklift operators. If the railroad was unhappy with a particular operator, it would contact Champlin & Wells, and the latter would take appropriate action.

Steven Conder was the forklift operator furnished by Champlin & Wells on February 3, 1978. Clifford Clarke, a Missouri Pacific employee, was helping Conder unload a railcar on that date when Conder negligently swung a heavy metal "raildog" attached to the forklift over Clarke's head. When Clarke stood up suddenly from a crouching position, the raildog struck him.

Clarke, who suffered neck and back injuries, filed an F.E.L.A. claim against the railroad. Missouri Pacific settled the claim for $155,514.34. Missouri Pacific then brought this suit against Champlin & Wells for contribution; Champlin & Wells joined Northeastern as a third party defendant.

The case was tried before the district court, *Missouri Pacific Railroad Co. v. Champlin & Wells, Inc.,* 600 F.Supp. 182 (E.D.Ark. 1985). Conder was not available as a witness. The court found that Conder and Clarke were both negligent, but that 95% of the fault lay with Conder. The district court further found that at the time of the accident, Conder had been an "employee of Champlin & Wells *acting within the scope of his employment*" (emphasis added). The court accordingly concluded that Champlin & Wells was liable under Arkan-

---

1. The Honorable Henry Woods, United States District Judge, Eastern District of Arkansas.

sas contribution statutes (Ark.Stat.Ann. §§ 34–1001—1009) for 95% of the settlement Missouri Pacific had paid Clarke.

Champlin & Wells contends that in the circumstances of this case, Conder was a "loaned servant" of Missouri Pacific, and that the district court erred in holding Champlin & Wells responsible for Conder's negligence. In support of this argument, Champlin & Wells cites a number of Arkansas cases in which the loaned servant doctrine has been applied. *Barton-Mansfield Co. v. Bogey*, 201 Ark. 860, 147 S.W.2d 977 (1941); *Mississippi River Fuel Corp. v. Morris*, 183 Ark. 207, 35 S.W.2d 607 (1931); *Arkansas Logging Co. v. Martin*, 116 Ark. 318, 173 S.W. 184 (1915); *St. Louis, Iron Mountain & Southern Railway v. Yates*, 111 Ark. 486, 165 S.W. 282 (1914).

The applicability of the loaned servant defense here depended upon whether, at the time of Conder's negligent act, he was under the direction and control of his employer, Champlin & Wells, or that of Missouri Pacific, the party to whom he had been lent or hired. *See Barton-Mansfield Co.*, 201 Ark. at 867, 147 S.W.2d at 980. "Ordinarily the question whether the general or special employer had the right of control and thus was the employee's master, presents an issue of fact...." *Watland v. Walton*, 410 F.2d 1, 3 (8th Cir. 1969). *Accord Steel Erectors, Inc. v. Lee*, 253 Ark. 151, 484 S.W.2d 874 (1972); *Bell Transportation Co. v. Morehead*, 246 Ark. 170, 437 S.W.2d 234 (1969).

After reviewing the record, we cannot say that the findings of the district court regarding the loaned servant issue were clearly erroneous. Conder was hired by Champlin & Wells to operate the forklift; and it was in the course of discharging that duty that he negligently injured Clarke. In addition, the parties' written contract specified that Missouri Pacific would have "no control over ... the services rendered by Contractor's employees or agents." While it perhaps would have been open to Champlin & Wells to prove that the practices of the parties had varied the terms of the agreement, the evidence of such variance would have had to have been substantial to have raised a triable issue of fact. *Ozan Lumber Co. v. McNeely*, 214 Ark. 657, 661, 217 S.W.2d 341, 343 (1949). In this regard, it appears Missouri Pacific registered any complaints it had about the forklift drivers with Champlin & Wells, rather than addressing the drivers directly. Missouri Pacific instructed the operators as to what work needed to be done, but did not tell them how to do it. Thus the evidence tended to reinforce, rather than modify, the allocation of authority as established by the written agreement. The fact that no Champlin & Wells agent was supervising Conder at the time of the accident is not controlling. It is the right to direct the manner in which work is done, rather than the actual exercise of that right, which determines whether a master-servant relationship is present. *Wilson v. Davison*, 197 Ark. 99, 103, 122 S.W.2d 539, 541 (1938).

Of the authorities cited by appellants, the closest on point—*Mississippi River Fuel Corp.*, 183 Ark. 207, 35 S.W.2d 607—is distinguishable. In that case, the party for whom the work was being done did not contractually disclaim responsibility for the acts of the workers, and in fact supervised the workers as they did their work. *Id.* In the other cases, the Arkansas court merely affirmed jury verdicts finding the loaned servant doctrine applicable; and the tortious acts occurred while the tortfeasors were performing special services that were clearly separate and distinct from the usual duties they performed for their regular employers. *Barton-Mansfield Co.*, 201 Ark. 860, 147 S.W.2d 977; *Arkansas Logging Co.*, 116 Ark. 318, 173 S.W. 184; *St. Louis, Iron Mountain & Southern Railway*, 111 Ark. 486, 165 S.W. 282.

Finding no error of law or fact, we affirm.